1  **VICTOR N. PIPPINS**
   California Bar No. 251953
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, California 92101-5008
   Telephone: (619) 234-8467
4  Victor_Pippins@fd.org

5  Attorneys for Mr. Rangel-Diaz

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE THOMAS J. WHELAN)**

| UNITED STATES OF AMERICA, | ) | CASE NO.: 08CR0296-W |
|---|---|---|
| Plaintiff, | ) | |
| | ) | STATEMENT OF FACTS AND |
| v. | ) | MEMORANDUM OF POINTS AND |
| | ) | AUTHORITIES IN SUPPORT OF MOTIONS |
| **BRIJIDO RANGEL-DIAZ**, | ) | |
| | ) | |
| Defendant. | ) | |

**I.**

**STATEMENT OF FACTS**

According to information provided by the government, on January 23, 2008, at approximately 5:00 p.m., Supervisory Border Patrol Agent Jeffrey Mielke was performing Infrared Scope operations in the Chula Vista Border Patrol Area of operations when he observed a group of eleven individuals walking north near an area known as "Diablo Canyon", approximately four miles east of the Otay Mesa Port of Entry.

One full hour later, at 6:00 p.m., Agent Mielke alerted Border Patrol Agent Matthew Deponte to his observations by way of radio. Agent Deponte responded to the area and located all eleven individuals. The Agent then identified himself as a Border Patrol agent and then interrogated the subjects as to their citizenship and possible possession of documents allowing them to enter or remain in the United States. All eleven subjects allegedly admitted to being citizens of Mexico with no legal permission to enter or remain in the United States. All eleven subjects were then transported to the Chula Vista Border Patrol Station for processing. It is alleged that the processing of these individuals took several hours because of the

1  remoteness of the area in which they were encountered. One of subjects apprehended was later identified
2  at Brijido Rangel-Diaz.

3  On January 24, 2008 , at approximately 2:14 a.m., Mr. Rangel-Diaz was informed that his
4  administrative rights no longer applied and that he was being charged criminally. Border Patrol Agent
5  Clinton Engledow then informed Mr. Rangel-Diaz of his Miranda rights. Mr. Rangel-Diaz refused to waive
6  these rights and chose not to answer any further questions outside of the presence of an attorney.

7  On February 6, 2008, Mr. Rangel-Diaz was indicted for being a deported alien who attempted to
8  enter the United States, in violation of 8 U.S.C. § 1326. The indictment alleged that Mr. Rangel-Diaz was
9  removed from the U.S. subsequent to April 30, 2003.

10  **I.**

11  **MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE**

12  Mr. Rangel-Diaz moves for the production of the following discovery. This request is not limited
13  to those items that the prosecutor knows of, but rather includes all discovery listed below that is in the
14  custody, control, care, or knowledge of any "closely related investigative [or other] agencies." See
15  United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989).

16  To date, *defense counsel has received 46 pages of discovery*. Mr. Rangel-Diaz respectfully requests
17  that the Government be ordered to produce discovery because Mr. Rangel-Diaz has reason to believe that
18  he has not received all the discoverable material in his case. Ms. Rangel-Diaz **specifically requests**
19  **production of a copy of the taped proceedings and any and all documents memorializing the**
20  **deportation proceeding allegedly held and any other proceedings that the Government intends to rely**
21  **upon at trial**. This request includes discovery of materials known to the Government attorney, as well as
22  discovery of materials which the Government attorney may become aware of through the exercise of due
23  diligence. See FED. R. CRIM. P. 16.

24  While Mr. Rangel-Diaz has had an opportunity to view his A-file, he has not received the copies of
25  audiotapes of any deportation proceedings or copies of documents that were requested at the time of the A-
26  file viewing. Mr. Rangel-Diaz specifically requests the documents memorializing the alleged deportation
27  proceedings and any other proceedings that the Government intends to rely upon at trial.

28  //

1    Second, the Government will likely try to show at trial that a Government officer searched the A-file and did not find an application by Mr. Rangel-Diaz for permission to enter the United States. Mr. Rangel-Diaz anticipates that the Government will attempt to admit a "Certificate of Non-Existence of Record" against him, arguing that if Mr. Rangel-Diaz had ever applied for permission to enter the United States, such an application would be found in the A-file and because such an application is not in the A-file, Mr. Rangel-Diaz must not have applied for permission to enter the United States. Although the certificate might be admissible, the question of the thoroughness of the search conducted by the Government of the A-file is, and should be, open to cross-examination. United States v. Sager, 227 F.3d 1138, 1145 (2000) (error not to allow jury to "grade the investigation.").

## II.

## THE INDICTMENT MUST BE DISMISSED BECAUSE IT FAILS TO ALLEGE A SPECIFIC, POST-CONVICTION DATE OF REMOVAL

The Fifth Amendment requires that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . ." Consistent with this Constitutional requirement, the Supreme Court has held that an indictment must "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished." United States v. Carll, 105 U.S. 611, 612-13 (1881). It is black letter law that an indictment that does not allege an element of an offense, even an implied element, is defective, and should be dismissed. See, e.g., Russell v. United States, 369 U.S. 749, 769-72 (1962); Stirone v. United States, 361 U.S. 212, 218-19 (1960); United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999); United States v. Keith, 605 F.2d 462, 464 (9th Cir. 1979).

The 9th Circuit has recently held that an indictment alleging a violation of 8 U.S.C. §1326 must allege both "the dates of a previous felony conviction and of a previous removal from the United States, subsequent to that conviction." United States v. Salazar-Lopez, 506 F.3d 748, 749-750 (9th Cir. 2007). In Salazar-Lopez, the indictment charged the defendant with a violation of § 1326 but "did not allege that Salazar-Lopez had been previously removed subsequent to a felony conviction, nor did it allege a specific date for Salazar-Lopez's prior removal." Id. at 750. The 9th Circuit unequivocally held that the indictment

//

"required" an allegation that the defendant "had been removed on a specific, post-conviction date." Id. at 751.

Here, the indictment fails to allege that Mr. Rangel-Diaz "had been removed on a specific, post conviction date." Instead, the indictment only says that Mr. Rangel-Diaz "was removed from the United States subsequent to April 30, 2003." The indictment completely fails to mention Mr. Rangel-Diaz's prior conviction and a specific date of deportation after that conviction. This is insufficient under Salazar-Lopez and therefore the indictment must be dismissed.

### III.

### THE STATEMENTS MUST BE SUPPRESSED UNDER MIRANDA AND A HEARING AS TO THE VOLUNTARINESS OF THE STATEMENTS MUST BE HELD

**A.    The Government Must Demonstrate That Mr. Rangel-Diaz's Field Statements To Agent Cortez Were Given After He Knowingly And Voluntarily Waived His Miranda Warnings**

   **1.    Miranda Warnings Must Precede Custodial Interrogation**

It is well known that before a defendant in custody can be questioned about alleged criminal activity, he must be given warnings under Miranda v. Arizona, 384 U.S. 436 (1966). Miranda explained that "when the person being interrogated is 'in custody at the station or otherwise deprived of his freedom of action in any significant way,'" warnings are required. Orozco v. Texas, 394 U.S. 324, 327(1969) (quoting Miranda, 384 U.S. at 477). A suspect is in custody if the actions of the interrogating officers and the surrounding circumstances, fairly construed, would reasonably have led him to believe that he could not freely leave. See United States v. Lee, 699 F.2d 466, 468 (9th Cir. 1982); United States v. Bekowies, 432 F.2d 8, 12 (9th Cir. 1970). Although questions regarding routine biographical information usually do not trigger the safeguard of Miranda, the exception does not apply "where the elicitation of information regarding immigration status is reasonably likely to inculpate the [suspect]." United States v. Gonzalez-Sandoval, 894 F.2d 1043, 1046 (9th Cir. 1990). In fact, because of the close relationship between civil and criminal immigration investigations, "[c]ivil as well as criminal interrogation of in-custody defendants by INS investigators should generally be accompanied by the Miranda warnings." United States v. Mata-Abundiz, 717 F.2d 1277, 1279 (9th Cir. 1983).

In determining whether an individual is in custody for purposes of Miranda, the 9th Circuit has

1  instructed courts to consider "(1) the language used to summon the individual; (2) the extent to which the
2  defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the
3  duration of the detention; and (5) the degree of pressure applied to detain the individual." United States v.
4  Kim, 292 F.3d 971, 973 (9th Cir. 2002) (citations omitted). The same considerations apply in the context
5  of custody at the border. See United States v. Estrada-Lucas, 651 F.2d 1261, 1265 (9th Cir. 1980).
6  Furthermore, questions by agents implying a person is suspected of criminal activity can give rise to a
7  reasonable belief that one is not free to leave and thus turn an encounter with law enforcement into custody
8  for purposes of Miranda. United States v. Chavez-Valenzuela, 268 F.3d 719, 725 (9th Cir. 2001). A person
9  does not need to be physically restrained to be in "custody." The 9th Circuit has found that an individual
10 questioned out in an open field, neither handcuffed or told he was under arrest, to be in custody for purposes
11 of Miranda. United States v. Beraun-Panez, 812 F.2d 578, 579 (1987). In that case, the court held that
12 "[a]lthough not physically bound, Beraun-Panez was subjected to psychological restraints just as binding."
13 Id. at 580.
14        Mr. Rangel-Diaz was clearly in custody. Although the Border Patrol report does not contain the
15 specific language used by the officers to "summon" Mr. Rangel-Diaz, the report explains that Agent Deponte
16 identified himself as a Border Patrol Agent. Considered with the fact that Agent Deponte was in uniform,
17 carrying a gun and in an isolated area near the Mexican border it is clear that Mr. Rangel-Diaz knew he was
18 in the custody of law enforcement. Further, Mr. Rangel-Diaz was confronted with evidence of his guilt
19 immediately as Agent Deponte began questioning him about his citizenship and nationality, the precise
20 elements of the crime he was suspected of committing, illegal reentry in violation of 8 U.S.C. § 1326. The
21 physical surrounding of the interrogation - in the brush close to the Mexican border - considered with the
22 questioning by a clearly identified Border Patrol agent demonstrates that Mr. Rangel-Diaz was suspected
23 of criminal activity and thus in custody. See Chavez-Valenzuela, 268 F.3d at 725. Because Mr. Rangel-Diaz
24 was in custody when he was questioned, any questioning must have been preceded by Miranda warnings.

25     **2.  The Government Must Prove That Any Waiver Of Miranda Rights Was Voluntary, Knowing and Intelligent**
26

27       Based on the discovery provided to the defense, Mr. Rangel-Diaz's field interrogation was not
28 preceded by any Miranda warnings and yet a statement was taken. As the Supreme Court has made clear,

1 when "interrogation continues without the presence of an attorney, and a statement is taken, a *heavy* burden
2 rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege
3 against self-incrimination and his right to retained or appointed counsel." Miranda, 384 U.S. at 475
4 (emphasis added) (citation omitted). It is undisputed that any waiver of the right to remain silent and the
5 right to counsel must be made knowingly, intelligently, and voluntarily in order to be effective. Schneckloth
6 v. Bustamonte, 412 U.S. 218 (1973). The standard of proof for a waiver of this constitutional right is in the
7 Supreme Court's own words "high." Miranda, 384 U.S. at 475; see also United States v. Heldt, 745 F.2d
8 1275, 1277 (9th Cir. 1984) (the burden on the government is "great" and the court "must indulge every
9 reasonable presumption against waiver of fundamental constitutional rights").

10 The validity of the waiver depends upon the particular facts and circumstances surrounding the case,
11 including the background, experience, and conduct of the accused. Edwards v. Arizona, 451 U.S. 477
12 (1981); Johnson v. Zerbst, 304 U.S. 458, 464 (1938); see also Heldt, 745 F.2d at 1277. The 9th Circuit has
13 explained that a Miranda waiver must be both (1) voluntary, and (2) knowing and intelligent." Derrick v.
14 Peterson, 924 F.2d 813, 820 (9th Cir. 1990), cert. denied, 502 U.S. 853 (1991). The voluntariness prong of
15 this analysis "is equivalent to the voluntariness inquiry under the [Fifth] Amendment . . . ." Id. However,
16 the second prong, requiring that the waiver be "knowing and intelligent," requires an inquiry into whether
17 "the waiver [was] made with a full awareness both of the nature of the right being abandoned and the
18 consequences of the decision to abandon it." Id. at 820-21 (quoting Colorado v. Spring, 479 U.S. 564, 573
19 (1987)). This Court must therefore determine whether "the requisite level of comprehension" existed before
20 any purported waiver may be upheld. Derrick, 924 F.3d at 820. Thus, "[o]nly if the 'totality of the
21 circumstances surrounding the interrogation' reveal *both* an uncoerced choice *and* the requisite level of
22 comprehension may a court properly conclude that the Miranda rights have been waived." Id. (quoting
23 Spring, 479 U.S. at 573) (emphasis in original) (citations omitted).

24 Therefore, unless the government demonstrates that the agents gave Mr. Rangel-Diaz Miranda
25 warnings before he made a statement and that he voluntarily, knowingly and intelligently waived those
26 rights before giving a statement, no evidence obtained as a result of the interrogation can be used against
27 him. Miranda, 384 U.S. at 479. Since Mr. Rangel-Diaz was placed into Border Patrol custody and was
28 immediately questioned directly about his citizenship and immigration status without any Miranda warnings,

any and all statements must be suppressed. See United States v. Estrada-Lucas, 651 F.2d 1261, 1265 (9th Cir. 1980).

**B.    The Government Must Prove That Mr. Rangel-Diaz's Statements Were Voluntary**

    **1.    A Statement Must Be Voluntary To Comply With The Due Process Clause**

Even if a statement is preceded by Miranda warnings, the due process clause prohibits the use of involuntary statements. Arizona v. Fulminante, 499 U.S. 279 (1991); Jackson v. Denno, 378 U.S. 368, 387 (1964). The government bears the burden of proving by a preponderance of the evidence that any confession or statements were voluntarily made by a criminal defendant. Lego v. Twomey, 404 U.S. 477, 483 (1972). A statement is voluntary if it is the product of a rational intellect and free will. Blackburn v. Alabama, 361 U.S. 199, 208 (1960).

As the Supreme Court has explained, in determining whether a statement is voluntary, courts must look at the totality of the circumstances, taking into account factors such as "the youth of the accused; his lack of education; or his low intelligence; the lack of any advice to the accused of his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment such as the deprivation of food or sleep. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973) (citations omitted). A statement or confession will be involuntary if coerced by either physical intimidation or psychological pressure. A confession is deemed involuntary not only if coerced by physical intimidation, but also if achieved through psychological pressure. "The test is whether the confession was 'extracted by any sort of threats or violence, (or) obtained by any direct or implied promises, however slight, (or) by the exertion of any improper influence.'" Hutto v. Ross, 429 U.S. 28, 30 (1976) (per curiam) (quoting Bram v. United States, 168 U.S. 532, 542-43 (1897)). Accord United States v. Tingle, 658 F.2d 1332, 1335 (9th Cir. 1981).

    **2.    This Court Must Hold A Hearing Under 18 U.S.C. § 3501 To Determine Whether Mr. Rangel-Diaz Statements Were Voluntary**

Under 18, U.S.C. § 3501(a), "[b]efore [a] confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness." This Court is thus required to determine whether any statements made by Mr. Rangel-Diaz were voluntary. Additionally, 18 U.S.C. § 3501(b) requires this Court to consider numerous enumerated factors in determining whether Mr. Rangel-

1  Diaz voluntarily made a statement. These factors include whether he understood the nature of the charges
2  against him and whether he understood his constitutional rights.
3  Section 3501(a) clearly requires this Court to make a factual determination. When a factual
4  determination is required, Federal Rule of Criminal Procedure 12 requires the court to make factual findings.
5  See United States v. Prieto-Villa, 910 F.2d 601, 606-10 (9th Cir. 1990). Since "'suppression hearings are
6  often as important as the trial itself,'" these findings should be supported by evidence, not merely an
7  unsubstantiated recitation of purported evidence in a prosecutor's responsive pleadings. Id. at 610 (quoting
8  Waller v. Georgia, 467 U.S. 39, 46 (1984)). Without the presentation of evidence, this Court cannot
9  adequately consider the 18 U.S.C. § 3501(b) factors. Therefore, Mr. Rangel-Diaz requests this Court
10 conduct an evidentiary hearing pursuant to 18 U.S.C. § 3501(a) to determine, outside the presence of the
11 jury, whether the statements he made were voluntary.

### IV.

### MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS

14 *Mr. Rangel-Diaz has received 46 pages of discovery.* He has not however received any audiotapes
15 of his deportation proceeding. Copies of any audiotapes were requested at the A-File viewing on February
16 28, along with copies of some of the forms contained in that file. None of the copies requested have been
17 received. As information comes to light, due to the government providing additional discovery in response
18 to these motions or an order of this Court, Mr. Rangel-Diaz may find it necessary to file further motions.
19 It is, therefore, requested that Mr. Rangel-Diaz be allowed the opportunity to file further motions based upon
20 information gained through the discovery process. Specifically, because Mr. Rangel-Diaz's collateral attack
21 on the underlying deportations relies on the audiotapes of the deportation proceedings, he requests the
22 opportunity to file further briefing to support his collateral attack once he has been provided an opportunity
23 to listen to the proceedings.
24 //
25 //
26 //
27 //
28 //

## VIII.

## **CONCLUSION**

For the foregoing reasons, Mr. Rangel-Diaz respectfully requests that the Court grant the above motions.

Respectfully submitted,

Dated: March 7, 2008

*s/ Victor N. Pippins*
**VICTOR N. PIPPINS**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Rangel-Diaz